IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

LIONEL HOLLOWAY,
*Defendant.*

Criminal Action No. ELH-09-0363

## MEMORANDUM OPINION

Through counsel, Lionel Holloway has filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)."  ECF 93.  The motion is supported by a memorandum of law (ECF 95) (collectively, the "Motion") and eight exhibits, including extensive medical records.  ECF 95-1 to ECF 95-8.  Holloway, who qualified as an Armed Career Criminal, is serving the mandatory minimum sentence of 180 months of imprisonment for the offense of being a felon in possession of a firearm.  The government filed an opposition (ECF 91) to Holloway's earlier pro se submissions.  *See* ECF 86; ECF 89.[1]  The government has also submitted seven exhibits.  ECF 91-1 to ECF 91-8. Defendant has replied (ECF 98) and submitted an additional exhibit.  ECF 98-1.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall grant the Motion.

---

[1] Holloway filed a pro se "Motion for Placement on Home Confinement Pursuant to the Cares Act 18 U.S.C. Section 3624(c)(2)."  ECF 86.  He also filed a "Motion to Reduce Sentence."  ECF 89.  The government notified the Court that it does not intend to supplement its original response to those motions.

# I.   Background[2]

On June 25, 2009, a grand jury in the District of Maryland issued an indictment charging Holloway with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  ECF 1.

Holloway was originally arrested by Maryland authorities on December 20, 2008, and released on bond the next day.  ECF 95-1 (Presentence Investigation Report, "PSR") at 1.  The State charges were nol prossed on July 7, 2009, when defendant made his initial appearance in federal court (ECF 5; ECF 95-1 at 1), and was temporarily detained.  ECF 5.  On July 10, 2009, following a detention hearing on July 9, 2009 (ECF 10), the defendant was released on home confinement.  *See* ECF 11.  The defendant remained in that status until he self-surrendered on November 2, 2010, to begin service of his sentence.  ECF 35 (Judgment) at 2; ECF 95 at 20.

Mr. Holloway tendered a plea of guilty to the single-count indictment on October 2, 2009, without a plea agreement.  ECF 18; ECF 19 (Letter from Defendant Regarding Guilty Plea).  According to the factual stipulation, on December 20, 2008, defendant was driving with a passenger at 56 miles per hour in area with a posted speed limit of 30 miles per hour.  *Id.* at 5.  Baltimore City Police officers conducted a traffic stop.  *Id.*  When the officers approached the vehicle, "[o]ne of the officers detected a strong odor of alcohol emanating from the Defendant," so the officer prepared to conduct a "standardized field sobriety test" of the defendant.  *Id.*  Before doing so, one of the officers asked the defendant if he had any weapons on him.  *Id.*  "The Defendant responded that a gun was present in the vehicle he was operating."  *Id.*  The defendant and the passenger were then placed in handcuffs, and the officers found a "Ruger, model P89,

---

[2]  The case was originally assigned to Judge William D. Quarles, Jr., who has since retired.  The case was reassigned to Judge J. Frederick Motz in 2015, due to Judge Quarles's retirement. The case was reassigned to me in 2019, due to the retirement of Judge Motz.

9mm semi-automatic pistol, serial number 31365574, loaded with seven rounds of ammunition." *Id.*

The officers indicated that they were planning to arrest Holloway and the passenger. Holloway then took responsibility for the gun and said that only "he should be charged." *Id.* The stipulation also noted that the defendant had previously been convicted in a Maryland State court of a crime punishable by more than one year, and his civil rights had not been restored. *Id.*

According to the PSR, Holloway had a base offense level of 24 and a Criminal History Category of IV. ECF 95-1, ¶¶ 17, 37. Notably, defendant had "three prior convictions for serious drug offenses," and therefore he was deemed an Armed Career Criminal, pursuant to 18 U.S.C. § 924(e)(1) and § 4B1.4(a) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 95-1, ¶¶ 25, 37.[3] After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the defendant had a final offense level of 30. *Id.* ¶ 27.

Based on an offense level of 30 and a Criminal History Category of IV, Holloway's Guidelines called for a period of incarceration ranging from 135 to 168 months of imprisonment. *Id.* ¶ 47. However, because defendant qualified as an Armed Career Criminal, he was subject to a mandatory minimum term of 180 months of imprisonment, *i.e.*, 15 years, under 18 U.S.C. § 924(e)(1). *Id.* ¶ 46. Because the statutorily required minimum sentence was greater than the maximum of the applicable Guidelines range, pursuant to U.S.S.G. §5G1.1(b), the required minimum sentence was also the Guidelines sentence, *i.e.*, 180 months. *Id.* ¶ 47.

Sentencing was held on September 13, 2010. ECF 31. At the time, the defendant was 35 years old. ECF 95-1 at 1. At the sentencing, Judge William D. Quarles, Jr., to whom the case

---

[3] If defendant were not an Armed Career Criminal, his base offense level would have been 24 (before deductions for acceptance of responsibility). ECF 95-1, ¶¶ 22. His final offense level would have been 21. *Id.* ¶ 24.

was then assigned, imposed the statutory mandatory minimum term of 180 months' imprisonment because of defendant's status as an Armed Career Criminal.  ECF 35 (Judgment); ECF 36 (Statement of Reasons).

Thereafter, Holloway noted an appeal.  ECF 37.  He challenged his sentence on various grounds.  *See* ECF 47.  The Fourth Circuit affirmed Holloway's conviction on May 25, 2011. ECF 47.  The mandate issued on June 16, 2011.  ECF 48.

Holloway has since filed three post-conviction petitions with this court under 28 U.S.C. § 2255.  ECF 49; ECF 59; ECF 70.  Judge Motz denied the first two petitions (ECF 55; ECF 65) and I denied the third. ECF 78.

Holloway, who was born in 1974, is now 45 years of age. ECF 95-2 at 1.  He is presently incarcerated at Allenwood Low FCI, a minimum security facility.  *Id.*  Notably, he has served about 118 months of his sentence — almost ten years.  ECF 91-1 (Inmate Data) at 3. This equates to more than 65% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b).  *Id.*  Accounting for good time credit, he has served more than 75% of his sentence.  *Id.* Defendant has a projected release date of August 8, 2023.  *Id.*  And, the Bureau of Prisons ("BOP") could release the defendant months earlier to a halfway house.

Holloway's medical history includes hypertension, mild chronic renal failure, and prediabetes. ECF 95 at 1; ECF 95-4 at 1. Defendant initially filed a request "for home confinement/sentencing reducing under C.A.R.E.S. Relief Act" on March 30, 2020.  ECF 89-1 at 1.  He subsequently filed an administrative remedy form with the Warden on April 8, 2020, appealing the Warden's denial of his request for "reduction of sentence/compassionate release." ECF 98 at 3; ECF 89-1 at 6.  The Warden denied Holloway's request on April 27, 2020.  ECF 89-1 at 9.   And, on May 1, 2020, Holloway filed a new request for "compassionate

release/sentence reduction." ECF 98-1 at 4; ECF 98 at 3. Thereafter, he filed a "Motion to Reduce Sentence" with this Court. ECF 89.

Additional facts are included, *infra*.

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per

year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing

Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, ___ F. App'x ___, 2020 WL 5412762, at * 1 (4th Cir. Sept. 9, 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

7

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D) is titled "**Other Reasons.**"  It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.  The Court may not rely on the Program Statement, however.  Rather, the Court must consider the Sentencing Commission's policy statements.  *Taylor*, 2020 WL 5412762, at * 1.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors

8

under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.    COVID-19[4]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19.[5] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe

---

[4] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[5] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).   As of September 29, 2020, COVID-19 has infected more than 7.1 million Americans and caused over 205,000 deaths in this country.   *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Sept. 29, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.   *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").   The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."   *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).   Indeed, for a significant period of time, life as we have known it came to a halt. Although many schools and businesses have reopened, others are subject to substantial restrictions.    And, in view of the recent resurgence of the virus in some parts of the country, businesses and schools are again facing closure or restrictions.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available.   *Id.* (citation omitted).   Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.   Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.   *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an example of an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See Id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).   Social distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*; *see also Cameron*, 2020 WL 2569868, at *1.  They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers.   Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their

spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."

*Hallinan*, 2020 WL 3105094, at *9.   Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.   *Seth*, 2020 WL 2571168, at *2.   Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.   *See* ECF 91 at 6-8 (detailing measures that BOP has implemented at BOP facilities).   Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[6]   As of September 29, 2020, the BOP had 126,699 federal inmates and 36,000 staff.   Also as of September 29, 2020, the BOP reported that 1,886 inmates and 717 BOP staff currently tested positive for COVID-19; 13,057 inmates and 1,133 staff had recovered from the virus; and 124 inmates and two staff member have died from the virus.   And, the BOP has completed 58,849 COVID-19 tests.   *See*  https://www.bop.gov/coronavirus/ (last accessed Sept. 29, 2020).   *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Allenwood Low, where the defendant is a prisoner, as of September 29, 2020, the BOP reported that no inmates have currently tested positive for COVID-19 and one inmate has recovered at the facility.   And, the facility has completed 128 tests.   *See* https://www.bop.gov/coronavirus/ (last accessed Sept. 29, 2020).

---

[6] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.   Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

#### IV.     Discussion

Holloway moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.   ECF 95 at 6-13.  In particular, defendant suffers from multiple conditions identified by the CDC as risk factors, including chronic renal failure, hypertension, and prediabetes.  *Id.*; ECF 95-4 (Medical Records).  Moreover, Holloway contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served.  ECF 95 at 18-24.

The government opposes Holloway's Motion at each step of the analysis.  The government first contends that Holloway failed to exhaust administrative remedies.  ECF 91 at 12.   It also argues that Holloway's medical conditions do not make him eligible for release.  *Id.* at 15-17.  And, in any event, the government maintains that the § 3553(a) factors militate against reducing Holloway's sentence.  *Id.* at 18-21.

#### A.  Exhaustion of Administrative Remedies

Holloway initially filed a request "for home confinement/sentencing reducing under C.A.R.E.S. Relief Act" on March 30, 2020.  ECF 89-1 at 1. Defendant subsequently filed an administrative remedy form on April 8, 2020, in which he asked to appeal "the warden [sic] denial of my reduction of sentence/compassionate release."  ECF 98-1 at 1; ECF 89-1 at 6.  The Warden denied Holloway's request on April 27, 2020.  ECF 89-1 at 9.  And, on May 1, 2020, Holloway filed a new request for "compassionate release/sentence reduction."  ECF 98-1 at 4; ECF 98 at 3.  Thereafter, he filed a "Motion to Reduce Sentence" with this Court.  ECF 89.

The government argues that Holloway's numerous requests do not count toward the exhaustion requirement applicable to a compassionate release request because Holloway sought release to home confinement.  ECF 91 at 12-13.  Although it is true that Holloway sought release

to home confinement in his request of March 30, 2020 (ECF 89-1 at 1), he later filed two requests that sought a "a reduction in sentence/compassionate release." ECF 89-1 at 6; ECF 98-1 at 4. Moreover, it would be unjust to deem the request improper merely because the defendant did not use particular terms or words when the import of the request was clear.

I am satisfied that Holloway has exhausted his administrative remedies, as required by § 3582(c)(1)(A).

### B.  Compassionate Release

As to grounds for relief under § 3582(c)(1)(A)(i), the defendant asserts that his medical condition qualifies him for release. He cites, *inter alia*, an opinion from the Northern District of New York, *United States v. Salvagno*, 2020 WL 3410601 (N.D.N.Y June 22, 2020), which granted compassionate release to an inmate whose sole medical condition is hypertension. ECF 95 at 7-9. In that case, the court relied on a range of scientific studies to find that "the scientific community knows with relative certainty [] that hypertension is one of the most common 'comorbidities' in people who experience severe cases of COVID-19." *Salvagno*, 2020 WL 3410601 at *12 (internal citations omitted). Therefore, the court concluded that the defendant faced a heightened risk of severe illness or death from COVID-19 as a result of having hypertension. *Id.* at *13. Defendant urges this court to adopt the same conclusion. ECF 95 at 9. And, he notes the increased risks as a result of the heightened risks for individuals with renal failure. *Id.* at 11.

The government contends that defendant's medical conditions do not render him eligible for a sentence reduction because the CDC "has not listed hypertension as a medical condition leading to higher risk for severe illness from contracting COVID-19." ECF 91 at 15. And, the

government notes that the defendant's hypertension is treated with medication and the condition is under control. *Id.* The government does not address defendant's other conditions.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). But, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16. Here, in addition to hypertension, Holloway has mild chronic renal failure and prediabetes which may aggravate his vulnerability to COVID-19.

Moreover, numerous courts have found that, in light of the COVID-19 pandemic, hypertension, along with other conditions, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason). *See also, e.g., United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280, at *3 (E.D. Mich. May 21, 2020) ("Courts have found that the combination of prediabetes and obesity have been sufficient to warrant release"); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020)

16

(finding defendant's age, hypertension, and obesity constituted an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason).

Accordingly, I am satisfied that Holloway satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a).  These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Defendant contends that he would have received the benefit of a more favorable plea offer if he were sentenced today.  ECF 95 at 20-21.  He maintains that "the practice surrounding plea negotiations for Armed Career Criminals has changed significantly since Mr. Holloway was sentenced."  ECF 95 at 20.  In particular, defendant alleges that the current practice is that "'standard offers are 10 [years of imprisonment] or less unless there's something aggravating, usually violence surrounding the arrest in the instant offense.'"  ECF 95 at 20; *see id.* at 21. Moreover, Holloway notes that his qualifying predicates were merely "street-level drug distribution" offenses.  ECF 95 at 1.  Therefore, according to defendant, if he were prosecuted

today, the government most likely would have offered a more lenient disposition.  *Id.* at 21.  *Cf. United States v. Decator*, CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020).[7]

Although the defendant claims that in recent years the government has changed its approach on cases like this one, the defense assertion is difficult to assess, validate, or measure. And, I cannot rule based on hypotheticals.  Nor does the defendant argue that he was erroneously found to be an Armed Career Criminal.  *Cf. United States v. Chambers*, 965 F.3d 667 (4th Cir. 2020); *United States v. Griffin*, __ F. App'x __, 2020 WL 5525777, at *1 (4th Cir. Sept. 15, 2020).

The question is whether the § 3553(a) factors support the reduction of Holloway's sentence.  As indicated, the government contends that the factors under § 3553(a) militate against granting Holloway's Motion.  ECF 91 at 18.  According to the government, "Holloway's offense conduct directly implicates the pervasive problem of handgun violence in the City of Baltimore." *Id.* at 19.  And, because "unlawful firearm ownership (e.g. by convicted felons) account for the majority of crimes committed with firearms" and "approximately half of all violent crimes are committed by convicted felons," firearm possession by the defendant poses a "peril to the health and safety of Baltimore."  *Id.* at 20.

The government correctly observes that the defendant pleaded guilty to being in possession of a firearm after he had sustained numerous felony convictions.  *See* ECF 91 at 18. And, the gravity of Holloway's offense and his criminal history cannot be minimized.

However, although possession of a loaded firearm by a convicted felon is a serious offense, there were no allegations that the defendant used the firearm or engaged in violence. ECF 95 at 19.  And, when defendant was stopped by the police for speeding, he voluntarily

---

[7] The government has noted an appeal in *Decator*.

acknowledged that there was a gun in his vehicle, and he readily took responsibility for it.  ECF 95 at 19.  Further, because of defendant's non-violent history and the nature of his offense, Mr. Holloway was released on pretrial supervision from July 10, 2009, until his self-surrender on November 2, 2010.  ECF 95 at 20; ECF 95-1 at 1.  And, for more than a year, while on pretrial release, the defendant was compliant with his pretrial supervision, with the exception of one positive urine specimen for marijuana.  ECF 95-1, ¶ 16.

Moreover, none of Holloway's prior convictions involved allegations of violence.  The three prior felony convictions that led to Holloway's status as an Armed Career Criminal were drug offenses for possession with intent to distribute.  ECF 95-1, ¶¶ 31-35.  One offense was committed in 1996, when the defendant was 21 years old, and two were committed in 1999, when the defendant was 24 years of age. *Id.*  For the first offense, he received a five year sentence, with all but one day suspended.  He subsequently violated his probation, and the balance of the sentence was imposed, concurrent with the sentence for the offense in 1999 that led to the violation. *See* ECF 95-1, ¶¶ 31, 35.

As to the two drug offenses committed in 1999, the defendant was sentenced in April 2000 to concurrent terms of twenty years, dating to January 2000, of which fifteen years were suspended. *Id.* ¶¶ 33, 35.  The defendant was paroled in December 2002, and parole ultimately expired with no violations. *Id.*

Thus, for these three drug offenses, the defendant served a total sentence of about three years.  In this case, he has already served almost ten years in prison – almost triple the time he previously spent in prison for the offenses that led to the Armed Career Criminal designation.

Holloway's good behavior while incarcerated also warrants recognition under 18 U.S.C. § 3553(a).  And, it suggests that he would not pose a danger to the community if released. *See*

18 U.S.C. § 3582(c)(1)(A)(ii).  He obtained his GED in 2010 and he has taken an impressive number of classes in a wide range of subjects.  ECF 95-2 at 1-2.  In addition, in 2019 the defendant completed a Non-Residential Drug Program.  *Id.*

While incarcerated, Mr. Holloway has maintained strong relationships with family, friends, and colleagues.  ECF 95 at 23.  Defendant submitted 16 letters from members of the community, including his former supervisor at Abbey Fencing, attesting to his good character. *Id.*; ECF 95-7.  The defendant also notes that he has a release plan that includes living with his fiancé and employment with Sparks Quality Fence Company, where he worked until he was incarcerated.  ECF 95 at 23; ECF 95-8.

Further, as noted, Holloway has already served about 118 months in prison.  This equates to about 65% of his total sentence.  ECF 95 at 2.  But, factoring in credit for good conduct, Holloway has served about 75% of his sentence, and has approximately 34 months until his release.  ECF 95 at 1.  And, as noted, the BOP could release him earlier to a halfway house.

Significantly, if Holloway were not an Armed Career Criminal, his statutory maximum would have been ten years of imprisonment.  18 U.S.C. §§ 924(a)(2), (g)(1).  He has basically served a sentence of that length.  And, his final offense level would have been 21, with a Criminal History Category of IV.  ECF 95-1, ¶ 24, 37.  In that circumstance, his Guidelines would have called for a period of incarceration ranging from 57 to 71 months.

As I see it, Holloway's incarceration for a period of almost ten years is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation.  Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Holloway's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release.

**V.    Conclusion**

For the forgoing reasons, I shall grant the Motion (ECF 95).  The defendant's sentence shall be reduced to time served plus 14 days, to be followed by three years of supervised released.  And, as a condition of supervised release, I will require a one-year period of home confinement.

An Order follows, consistent with this Memorandum Opinion.


Date:   October 2, 2020                                   _____/s/_____
                                                         Ellen Lipton Hollander
                                                         United States District Judge

21